EXHIBIT "C"

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT is made as of July 29, 2016 ("**Agreement**"), between Quaker Furniture Inc., a North Carolina Company ("**Debtor**"), McNeil & Partners LP, a Missouri, USA limited partnership (**"Grantor"**) and Clyde L. Lail, Gary N. Lail and David C. Lail, (**"Secured Parties"**), with respect to the following:

A.   Debtor, Grantor and Secured Parties are parties to that certain Stock Purchase Agreement, dated as of July 29, 2016 (the **"Acquisition Agreement"**).

B.   Pursuant to the Acquisition Agreement, Secured Parties has agreed to finance $500,000 (the **"Financed Amount"**) of the total purchase price payable by Debtor to Secured Parties pursuant to the Acquisition Agreement.

C.   In order to evidence the obligation of Debtor to pay the Financed Amount, Debtor is concurrently herewith executing in favor of Secured Parties that certain Secured Promissory Note (the **"Note"**) dated July 29, 2016, in the original principal sum of the Financed Amount.

D.   As security for each and all of the "Obligations" (as defined herein), Grantor is entering into this Agreement to grant to Secured Parties a continuing security interest in and lien on the Stock being sold to Grantor pursuant to the Acquisition Agreement.

NOW, THEREFORE, the parties hereto hereby agree as follows:

1.   **Grant of Security Interest.**

1.1   As security for the full and timely payment and performance of each and all of the Obligations, Grantor hereby grants to Secured Parties a continuing security interest in and to the following: (collectively, the **"Collateral"**), 100 % of the Stock of the Debtor (collectively, together with any other securities distributed to Grantor in connection therewith, the **"Pledged Securities"**), concurrently herewith Grantor is delivering to Secured Parties in pledge all certificates evidencing the Pledged Securities, together with assignments duly executed by Debtor in blank. Unless an "Event of Default" (as defined in Section 5) has occurred and is continuing, Grantor shall have the right to vote all of the Pledged Securities. In the Event of a Default at any time prior to the indefeasible payment and performance in full of the Obligations, Secured Parties, in its discretion, may cause the issuer(s) of the Pledged Securities to transfer the record ownership of such Pledged Securities to Secured Parties.

2.   **Obligations.**

As used herein, the term **"Obligations"** shall mean and include each and all of the following:

2.1   The full and complete release and or replacement by the Debtor and or Grantor of guarantees of the Secured Parties as it relates to secured debt of the Debtor within 30 days of the date of this Agreement.

1

2.2 The full and timely payment by Debtor of each financial obligation of Debtor under the Note (including the full and timely payment of all "Principal" and "Interest" (as defined in the Note)); and

2.3 The full and timely payment and performance by Debtor of each of Debtor's obligations, covenants, agreements, representations and warranties owing and/or made to Secured Parties under this Agreement.

3. **Covenants of Debtor.**

Until the full and indefeasible payment and performance of the Obligations, Debtor hereby covenants to Secured Parties as follows:

3.1 **Security Interest.** Debtor shall at all times maintain or cause to be maintained in favor of Secured Parties the security interests granted hereunder as valid and first priority security interests in the Collateral, free and clear of all other security interests, liens, mortgages and encumbrances of any nature whatsoever (collectively, **"Encumbrances"**).

3.2 **Defense of Collateral.** Debtor shall at all times timely defend or cause to be defended the Collateral and Secured Parties' rights therein against all third Parties claims and Encumbrances.

3.3 **Taxes and Claims.** Debtor shall at all times timely pay and discharge or cause to be paid and discharged all taxes, assessments and other charges and claims of any nature whatsoever imposed upon or relating to the Collateral which might or could, if unpaid, become an Encumbrance on the Collateral.

3.4 **Chief Executive Office, Name of Debtor.** Debtor shall furnish Secured Parties with at least thirty (30) days prior written notice of any change in the name, or chief executive office or of Debtor.

3.5 **Notice of Events.** Debtor shall promptly give notice in writing to Secured Parties of the occurrence of any "Event of Default" (as defined in Section 5).

3.6 **Payment of Note.** Debtor shall timely pay to Secured Parties each financial obligation owing by Debtor under the Note including the timely payment of all Principal and Interest owing thereunder from time to time.

3.7 **Removal of Guarantees.** Debtor shall within 30 days of this Agreement cause the release or replacement of the guarantees of the Secured Parties as it relates to the secured debt of the Debtor.

3.8 **Further Assurances.** Upon the request of Secured Parties, Debtor shall duly execute and deliver at its sole cost and expense, or cause to be executed and delivered at its sole cost and expense, such further documents and take such further actions as may be necessary or desirable, in the reasonable discretion of Secured Parties, to carry out the provisions, purposes and objectives of this Agreement, and to perfect and maintain Secured Parties' security interests granted hereunder in and to all of the Collateral.

2

4. **Representations and Warranties of Grantor.**

    4.1 **Representations and Warranties.** Grantor hereby represents and warrants to Secured Parties as follows:

    4.2 **Binding Agreement.** This Agreement constitutes the valid and legally binding obligation of Grantor enforceable against Grantor in accordance with its terms.

    4.3 **Due Authorization; No Conflicts or Violations.** The execution, delivery and performance of this Agreement, and the grant of the security interests contemplated herein, will not violate any provision of articles of organization, operating agreement, of any law, any order of any court or other agency of Missouri; will not violate any provision of any agreement or instrument to which Grantor is a Parties or by which Grantor or any of its properties or assets may be bound; be in conflict with, result in a breach of, or constitute a default under, any such agreement or other instrument; or result in the creation or imposition of any Encumbrance upon the Collateral (other than the security interest granted hereunder).

    4.4 **Authorizations.** All authorizations, approvals, registrations or filings from or with any governmental agency or any other person or entity, required for the execution, delivery or performance by Grantor of this Agreement, have been obtained or made and are in full force and effect.

    4.5 **The Security Interest.** This Agreement creates and grants a valid first priority security interest in favor of Secured Parties in the Collateral subject to no other Encumbrances.

    4.6 **Making of and Survival of Representations and Warranties.** The representations and warranties of Grantor made herein shall survive the execution and delivery of this Agreement and the Note.

5. **Event of Default.**

As used herein the term **"Event of Default"** shall mean the occurrence of any of the following events:

    5.1 Any default by Debtor in the replacement and or removal of guarantees of the Secured Parties as it relates to the secured debt of the Debtor.

    5.2 Any default by Debtor in the payment, performance or observance of any obligation, agreement, representation, warranty or covenant of Debtor contained in this Agreement or the Note (including the failure of Debtor to timely pay any Principal or Interest as and when due under the Note);

    5.3 Any statement, representation or warranty by Debtor contained herein, in the Note or furnished by Debtor pursuant to the terms of this Agreement or the Note shall be false or misleading in any respect;

      5.4      Any person or entity shall establish a right in the Collateral which is equal or superior to the security interest of Secured Parties granted pursuant to this Agreement;

      5.5      Any levy of an attachment, execution or other writ on all or any part of the Collateral; or

      5.6      (i) Any petition (whether voluntary of involuntary) is made or filed for the appointment of a receiver, trustee, custodian or liquidator of Debtor or of all or any part of the assets of Debtor; (ii) Debtor becomes unable to, or admits in writing its inability to, pay its debts as they become due; (iii) Debtor makes a general assignment for the benefit of creditors; (iv) Debtor is adjudicated a bankrupt or insolvent; (v) any action of any nature whatsoever (whether voluntary or involuntary) is taken seeking to subject Debtor to any bankruptcy, reorganization, receivership, liquidation, insolvency or similar laws, which in the case of any involuntary action, is not stayed or withdrawn within sixty (60) days thereof; (vi) any action is taken which would have the effect of dissolving Debtor; or (vii) any action is taken for the purpose of effecting any of the foregoing.

**6.**      **Remedies Upon Default.**

Upon the occurrence of any Event of Default, Secured Parties may exercise any one or more of the following rights and remedies:

      6.1      Secured Parties shall have at any time prior to the indefeasible payment and performance in full of the Obligations, in its discretion, may cause the issuer(s) of the Pledged Securities to transfer the record ownership of such Pledged Securities and all such other rights and remedies granted hereunder or under any other agreement, instrument or document with respect to the Collateral, all the rights and remedies of a secured Parties in effect in the relevant states, and all other rights and remedies (whether as a secured Parties or otherwise) under any and all applicable laws in any jurisdiction (whether foreign or domestic), and all such actions which Secured Parties may deem necessary or appropriate for the maintenance, preservation and protection of the Collateral.

      6.2      Debtor hereby recognizes that, because of present or future circumstances, Secured Parties may be unable to effect a sale to the public of the Pledged Securities, but may be compelled to resort to one or more sales to a restricted group of purchasers who may be required to agree to acquire all or a part of the Pledged Securities for their own account, for investment and not with a view to the distribution or resale thereof. Debtor agrees that sales so made may be at prices and on other terms less favorable than if the Pledged Securities were sold to the public, and that Secured Parties shall have no obligation to delay the sale of any Pledged Securities for the period of time necessary to permit Debtor to register the Collateral for sale to the public under any federal or State securities laws. Debtor agrees that negotiated sales made under the foregoing circumstances, whether on cash or credit terms, shall be deemed to have been made in a commercially reasonable manner.

7. **Rights and Remedies Cumulative.**

No right or remedy conferred upon Secured Parties herein or in any other agreements between Debtor and Secured Parties (including the Note and the Acquisition Agreement) shall be exclusive of any other right or remedy contained herein or therein. Such rights and remedies are cumulative and are not exclusive of any right or remedy which Secured Parties may otherwise have.

8. **Application of Proceeds After an Event of Default.**

After the occurrence of an Event of Default, all income from the Collateral and all proceeds from any realization and/or sale of the Collateral pursuant hereto shall be applied against the Obligations in such order as Secured Parties may elect in its sole discretion. Any amounts remaining after such applications shall be remitted to Debtor or as a court of competent jurisdiction may otherwise direct.

9. **Waiver.**

Debtor shall be absolutely and unconditionally liable for each and every Obligation from time to time owing by Debtor hereunder. Debtor further acknowledges and agrees that Secured Parties may proceed to exercise all or a portion of Secured Parties's rights and remedies hereunder against Debtor without first proceeding to exercise or exhaust its rights and remedies under the Note.

10. **Termination of Security Interest.**

Upon the indefeasible payment and performance in full of all Obligations, Secured Parties at Debtor's expense shall execute and deliver to Debtor all documents reasonably requested by Debtor to evidence the termination of Secured Parties's security interest in the Collateral and Secured Parties shall return to Debtor all certificates evidencing Pledged Securities (and the corresponding assignments) to the extent that Secured Parties has not foreclosed upon any of such Pledged Securities pursuant to Section 6 hereof.

11. **General Provisions.**

   11.1 **Notices.**

All notices and other communications given or made pursuant hereto shall be in writing and shall be deemed to have been duly given or made (i) as of the date delivered if delivered personally or if sent by email, provided that the email is promptly confirmed by written confirmation sent by registered or certified U.S. mail (postage prepaid, return receipt requested), or (ii) three (3) days after being mailed if mailed by registered or certified U.S. mail (postage prepaid, return receipt requested) to the parties hereto at the following addresses (or at such other address for a Parties as shall be specified by like notice, except that notices of changes of address shall be effective upon receipt):

5

| | |
|---|---|
| if to Debtor: | **Quaker Furniture Inc.**<br>**3060 Main Ave SE**<br>**Hickory, NC 28602** |
| if to Secured Parties: | **Clyde L. Lail**<br>**c/o Trinity Village**<br>**1265 21st Street NE**<br>**Hickory, NC 28601**<br><br>**David C. Lail**<br>**355 9th Street NW**<br>**Hickory, NC 28601**<br><br>**Gary N. Lail**<br>**6168 Plantation Pointe Dr.**<br>**Granite Falls, NC 28630** |
| if to Grantor: | **McNeil & Partners LP**<br>**Post Office Box 2211**<br>**St. Louis, MO 63158**<br>**ATTN: Edward McNeil**<br>**ejm@mcneilandpartners.com** |

11.2   **Entire Agreement Modification.**

This Agreement, the Note and the Acquisition Agreement constitute the entire agreement between the parties hereto with respect to the subject matter hereof and supersede all prior agreements and undertakings, both written and oral, with respect to the subject matter hereof. This Agreement is not intended to confer upon any other person any rights or remedies hereunder. This Agreement may not be amended or modified except by an instrument in writing signed by all parties hereto.

11.3   **Counterparts.**

This Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

11.4   **Governing Law; Jurisdiction.**

This Agreement shall be governed by and construed in accordance with the laws of State of Missouri without giving effect to that State's choice of law rules.

### 11.5 Attorneys' Fees.

In the event any suit is brought by any Parties hereto to enforce the terms of this Agreement, the prevailing Parties shall be entitled to the payment of its reasonable attorneys fees and costs, as determined by the judge of the Court.

### 11.6 Successors in Interest.

All provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the respective heirs, executors, administrators, personal representatives, successors and assigns of any of the parties to this Agreement.

### 11.7 Interpretation.

The Section headings are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of any of the provisions of this Agreement. All references to Sections contained in this Agreement refer to the Sections of this Agreement. All references to the words "include" or "including" mean "including without limitation." There will be no presumption against any Parties (or its counsel) on the ground that such Parties (or its counsel) was responsible for preparing this Agreement or any part of it.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first set forth above.

**Quaker Furniture Inc.**
By: _____
Its: Chairman

**McNeil & Partners LP**
By: _____

_____
Clyde L. Lail

_____
Gary N. Lail

_____
David C. Lail